**Opinion issued February 25, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-19-00149-CV**

———————————

**GARELD DUANE ROLLINS, JR., Appellant**

**V.**

**SOUTHERN BAPTIST CONVENTION, Appellee**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-69277A**

---

# O P I N I O N

Gareld Duane Rollins, Jr. sued the Southern Baptist Convention and several other defendants alleging that he was sexually abused by a member of the Convention's executive committee, H. Paul Pressler III. The trial court granted summary judgment in favor of the Convention on the basis that Rollins's claims

against it are barred by limitations. The trial court later severed Rollins's claims against the Convention from his claims against the other defendants. Rollins now appeals from the resulting final judgment in the Convention's favor. We reverse the judgment and remand for further proceedings consistent with our opinion.[1]

## BACKGROUND

In October 2017, Rollins sued Pressler, the Convention, and several other defendants. Rollins alleges that Pressler raped him in 1980, when Rollins was 14 years old, and then repeatedly raped him afterward over the course of the next 24 years or so. Pressler was a member of the Convention's executive committee from 1984 through 1991. Rollins alleges that the Convention and the other defendants helped Pressler cover up his crimes. Rollins asserted causes of action against the Convention for breach of informal fiduciary duty, assault by offensive physical contact as well as conspiracy to commit assault, fraud and fraudulent misrepresentation as well as conspiracy to commit fraud, fraudulent concealment as well as conspiracy to commit fraudulent concealment, and negligence.

According to Rollins's suit, Pressler began molesting him after they met at a Bible study group led by Pressler. Pressler told Rollins that the sexual abuse was divinely sanctioned but needed to be kept secret because only God would understand

---

[1] Due to the severance, Rollins's claims against several other defendants are subject to a separate appeal. *See Rollins v. Pressler et al.*, No. 01-19-00460-CV.

it. Pressler allegedly continued to rape Rollins throughout the latter's high-school years. The sexual contact between Rollins and Pressler continued off and on afterward until sometime in 2003 or 2004, when Rollins was in his thirties.

Rollins and Pressler had an altercation in a Dallas hotel room in 2003. As a result of the altercation, Rollins sued Pressler for simple assault. They settled the lawsuit in 2004. As part of the settlement agreement, Pressler agreed to pay Rollins $1,500 per month for 25 years, and Rollins agreed to keep the suit and underlying altercation confidential. Rollins and Pressler have not seen each other since.

Rollins alleges that while he was in prison in November 2015, he received psychiatric counseling that made him realize for the first time that his relationship with Pressler had been non-consensual and that Pressler had repeatedly raped him for years. After his release from prison, Rollins filed this suit in October 2017.

The Convention moved for summary judgment asserting that the:

- five-year statute of limitations for sexual assault applied to Rollins's claim for assault by offensive contact and his related conspiracy claim;

- four-year statute of limitations applied to Rollins's claims for breach of fiduciary duty, fraud claims, and his related conspiracy claims; and

- two-year statute of limitations applied to Rollins's negligence claim.

*See* TEX. CIV. PRAC. & REM. CODE §§ 16.003(a), 16.004(a)(4)–(5), 16.0045(b)(1). The Convention argued that because Pressler last saw Rollins in 2004, these limitations periods ran from that year at the latest and thus expired long ago.

Rollins opposed summary judgment on two grounds. First, he argued that he was of unsound mind when his causes of action accrued in 2004 and that limitations thus was tolled until his 2015 breakthrough in psychiatric counseling, when he first realized the true nature of Pressler's abuse. *See id.* § 16.001(a)(2), (b). In support, he relied on the opinion of Dr. Harvey A. Rosenstock.

Rosenstock submitted two affidavits. He began treating Rollins in 2016. Rollins has a history of drug and alcohol abuse and incarceration. This behavioral pattern began when he was about 13 years old and continued into adulthood.

Rosenstock diagnosed Rollins as suffering from post-traumatic stress disorder resulting from Rollins's childhood sexual trauma. He opined that this diagnosis led him to "conclude that as of November 2015, Mr. Rollins was of unsound mind which rendered him incapable of making diligent inquiry as to the reasons for his repeated intoxication followed by appropriate action." Rosenstock also opined that "anal penetration of an innocent child is sufficiently traumatic to cause these overwhelmingly painful memories to be defensively repressed and dissociated until a safer time in the name of survival." Rosenstock concluded that Rollins's "repeated intoxication at a severity to result in incarceration is an indicator of a person chronically suffering from an unsound mind" and that Rollins's mental condition "has undoubtedly adversely affected his decision making for years."

4

Second, Rollins argued that the doctrine of fraudulent concealment tolled limitations.[2] Rollins claimed that Pressler had induced him not to file suit sooner by persuading him that their sexual activities were divinely approved but had to be concealed from others because no one but God would understand their relationship. Rollins also claimed that Pressler had induced him not to file suit sooner by buying his silence with the monthly payments from the 2004 settlement.

The trial court granted summary judgment in favor of the Convention based on its limitations defense. The trial court later severed Rollins's claims against the Convention from his claims against several other defendants, making the summary judgment final and appealable. On appeal, Rollins challenges the trial court's determination that his claims against the Convention are barred by limitations.

## DISCUSSION

Rollins does not dispute that he and Pressler last had contact in 2004. Nor does Rollins dispute that the two-, four-, and five-year statutes of limitation apply to his

---

[2] Rollins has used multiple labels for his second basis for tolling: fraudulent inducement, fraudulent concealment, and equitable estoppel. Despite the use of multiple labels, Rollins is asserting a single tolling theory and its correct name is fraudulent concealment. *See Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996) (deferral of accrual of cause of action based on fraud or concealment resembles equitable estoppel); *see also BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65–67 (Tex. 2011) (court has recognized two doctrines that may extend limitations, discovery rule and fraudulent concealment, latter of which is equitable in nature). Fraudulent inducement is a cause of action. *See Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018).

5

claims. Relying on the exception for unsound mind and the doctrine of fraudulent concealment, however, Rollins argues that the trial court erred in granting summary judgment to the Convention on the basis of limitations.

## Standard of Review and Applicable Law

*Traditional Summary Judgment Standard*

We review a summary judgment de novo. *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019). In a de novo review, we give no deference to the trial court's ruling. *McFadin v. Broadway Coffeehouse*, 539 S.W.3d 278, 282 (Tex. 2018).

A defendant moving for traditional summary judgment has the burden to show that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). The defendant thus must conclusively disprove at least one element of each of the plaintiff's claims or conclusively prove each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Proof is conclusive if reasonable people could not differ in their conclusions. *Helix Energy Sols. Grp. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017).

If the defendant carries his burden, then the burden shifts to the plaintiff to come forward with evidence that raises a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). In deciding whether a disputed issue of material fact precludes summary judgment in

the defendant's favor, we credit evidence favorable to the plaintiff if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Erikson*, 590 S.W.3d at 563. We indulge every reasonable inference and resolve all doubts in the plaintiff's favor. *Lujan*, 555 S.W.3d at 84.

### *Statute of Limitations*

Limitations is an affirmative defense. TEX. R. CIV. P. 94. A defendant that moves for summary judgment based on this defense bears the burden to prove its elements, including when the plaintiff's claims accrued. *Erikson*, 590 S.W.3d at 563. When, as here, the plaintiff pleads a tolling doctrine as an exception to the defense of limitations, the defendant likewise must conclusively negate the exception. *Id.* A defendant can negate an exception to the defense of limitations in one of two ways. He can conclusively establish that the exception does not apply as a matter of law. *See Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (per curiam) (discussing discovery rule). Or, if the exception applies, the defendant can conclusively show that the evidence disproves the exception. *Id.*

### *Unsound Mind*

A person of unsound mind is under a legal disability. TEX. CIV. PRAC. & REM. CODE § 16.001(a)(2). If a person is of unsound mind when a cause of action accrues, the time during which he is disabled is not included in the limitations period. *Id.*

§ 16.001(b). But if he becomes of unsound mind after the cause of action accrues, then his legal disability does not suspend the running of limitations. *Id.* § 16.001(d).

In general, unsound mind means insane or mentally incompetent. *Freeman v. Am. Motorists Ins. Co.*, 53 S.W.3d 710, 713 (Tex. App.—Houston [1st Dist.] 2001, no pet.). But tolling of limitations based on the plaintiff's unsound mind is not restricted to those who have been adjudged insane or mentally incompetent. *Id.*

To establish an entitlement to tolling of limitations based on unsound mind, a plaintiff has to either produce specific evidence that shows he did not have the mental capacity to pursue his suit or submit a fact-based expert opinion to this effect. *Id.*; *Gribble v. Layton*, 389 S.W.3d 882, 894 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). A plaintiff lacks the mental capacity to pursue his suit if he is unable to participate in, control, or understand the progression and disposition of the suit. *See Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 755 (Tex. 1993). In assessing a plaintiff's mental capacity, courts should consider, for example, the degree to which he was capable of giving information and testifying. *See id.* at 756.

**Analysis**

**A. Rollins has not waived his right to assert the applicability of the unsound mind tolling exception to limitations on appeal.**

The Convention argues that Rollins has waived the right to raise the issue of unsound mind on appeal because his brief fails to address every argument for the

tolling doctrine's inapplicability raised by the Convention below. But this argument rests on a misunderstanding of the law of preservation.

An appellant must challenge each independent ground that could fully support the trial court's ruling. *D & M Mar. v. Turner*, 409 S.W.3d 693, 697 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). But he need not address every argument that his adversary made about these independent grounds in the trial court. There is no requirement that an appellant frame his brief according to the arguments raised by another below. *See State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 273 (Tex. 2017) (party may waive issue by failing to raise it below, but parties are free to make new arguments about unwaived issues properly before appellate court).

The trial court ruled for the Convention on a single ground: limitations. It is undisputed that Rollins raised the unsound mind tolling exception in the trial court. Thus, Rollins has preserved the issue for appellate review. *See id.*

### B. The Convention bears the summary-judgment burden to conclusively negate the applicability of the tolling exception for unsound mind.

The parties dispute who has the summary-judgment burden of proof on the issue of unsound mind. The Convention argues that Rollins had to raise a genuine issue of material fact as to his unsound mind. Rollins argues that the Convention had to conclusively prove he was of sound mind. Intermediate appellate decisions on the subject are mixed. Based on the decisions of the Supreme Court of Texas, we hold that the Convention has the burden to conclusively negate the exception.

9

In *Myers v. St. Stephen's United Methodist Church*, our court squarely confronted this issue in a case involving sex-abuse allegations. No. 01-96-001460-CV, 1998 WL 723887 (Tex. App.—Houston [1st Dist.] Oct. 8, 1998, pet. denied) (not designated for publication). The *Myers* court held that the plaintiff need only raise the unsound mind tolling statute in his pleadings. *Id.* *4. Once the plaintiff has done so, a defendant moving for summary judgment on the basis of limitations must conclusively negate the unsound-mind exception. *Id.* at *4–5. *Myers* was non-precedential. *See* TEX. R. APP. P. 47.7(b) (unpublished opinions predating 2003 citable but not precedent). But *Myers* relied on a published decision that likewise stated that a defendant must negate a tolling statute, like section 16.001, interposed by the plaintiff. *See Myers*, 1998 WL 723887, at *4 (citing *Hargraves v. Armco Foods*, 894 S.W.2d 546, 547 (Tex. App.—Austin 1995, no writ) (per curiam)).

When our court decided *Myers*, there were at least two published decisions stating that a defendant seeking summary judgment based on limitations must conclusively negate unsound-mind tolling if the plaintiff interposed it as a defense to limitations. *See Hargraves*, 894 S.W.2d at 547; *Smith v. Erhard*, 715 S.W.2d 707, 709 (Tex. App.—Austin 1986, writ ref'd n.r.e.). These decisions are consistent with the Supreme Court's decision in *Zale Corp. v. Rosenbaum*, in which the Court held that a defendant moving for summary judgment based on limitations has to conclusively negate the applicability of any statute suspending the running of

10

limitations that is interposed by the plaintiff. 520 S.W.2d 889, 891 (Tex. 1975) (per curiam). Our court has understood *Zale* to stand for the rule that a party seeking summary judgment based on limitations has the burden to negate a tolling statute raised by the nonmovant and that the nonmovant's assertion that the tolling statute applies suffices to raise it. *See Medina v. Tate*, 438 S.W.3d 583, 586–88 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also Min v. Avila*, 991 S.W.2d 495, 504 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing *Zale* for proposition that "movant must negate any tolling interposed by the nonmovant").

But our court has not been consistent on this subject. In an even earlier non-precedential decision, *Brown v. Simpson Pasadena Paper Co.*, we held that the plaintiff had the burden of proof as to unsound mind on summary judgment. No. 01-91-00919-CV, 1992 WL 173449, at *1 (Tex. App.—Houston [1st Dist.] July 23, 1992, no writ) (not designated for publication). In *Brown*, we reasoned that unsound mind, being a matter of confession and avoidance, was an affirmative defense to limitations. *See id.*; *see also* TEX. R. CIV. P. 94 (affirmative defense includes any "matter constituting an avoidance"); *accord Yanas v. Arco Prods. Corp.*, No. 14-91-00537-CV, 1991 WL 188701, at *2 (Tex. App.—Houston [14th Dist.] Sept. 26, 1991, writ denied) (not designated for publication) (treating unsound mind as avoidance or affirmative defense to limitations). A couple of years later, our court seemingly held that the plaintiff bears the summary-judgment burden on unsound

11

mind in a published opinion. *See Palla v. McDonald*, 877 S.W.2d 472, 474–77 (Tex. App.—Houston [1st Dist.] 1994, no writ) (if plaintiff raises fact issues on unsound mind, defendant moving for summary judgment must conclusively negate them). In *Palla*, we relied on the Third Court's decision in *Vale v. Ryan*, 809 S.W.2d 324 (Tex. App.—Austin 1991, no writ). *See Palla*, 877 S.W.2d at 474. *Vale* applied a different exception to limitations and actually said something rather different about the burden of proof—that the defendant has the burden of disproving a tolling provision if the plaintiff asserts that the provision applies. 809 S.W.2d at 326.

Several later Texas decisions likewise have assigned the summary-judgment burden of proof as to unsound mind to the plaintiff. *See Gribble*, 389 S.W.3d at 894–95; *Doe v. Catholic Diocese of El Paso*, 362 S.W.3d 707, 723 (Tex. App.—El Paso 2011, no pet.); *Chavez v. Davila*, 143 S.W.3d 151, 155–56 (Tex. App.—San Antonio 2004, pet. denied); *Freeman*, 53 S.W.3d at 713–15; *Grace v. Colorito*, 4 S.W.3d 765, 769 (Tex. App.—Austin 1999, pet. denied).[3] *Freeman* was decided by our

---

[3]   Several memorandum opinions follow one or more of these decisions. *See Draughon v. Johnson*, No. 05-18-01184-CV, 2020 WL 364144, at *4 (Tex. App.—Dallas Jan. 22, 2020, pet. filed) (mem. op.); *Morris v. Unified Hous. Found.*, 05-13-01425-CV, 2015 WL 4985599, at *5 (Tex. App.—Dallas Aug. 21, 2015, no pet.) (mem. op.); *Ramirez v. Mansour*, No. 04-06-00536-CV, 2007 WL 2187103, at *5–6 (Tex. App.—San Antonio Aug. 1, 2007, no pet.) (mem. op.); *Chavez v. Medtronic, Inc.*, No. 08-02-00332-CV, 2004 WL 309303, at *4 (Tex. App.—El Paso Feb. 19, 2004, no pet.) (mem. op.). In non-precedential decisions, the Fifth Court has been somewhat inconsistent as to the summary-judgment burden. *Compare Doe v. Roman Catholic Diocese of Dallas ex rel. Grahmann*, No. 05-99-01774-CV, 2001 WL 856963, at *1–2 (Tex. App.—Dallas July 31,

12

court, primarily in reliance on *Grace*. *See Freeman*, 53 S.W.3d at 713. It did not mention this court's prior decisions on this subject—*Brown*, *Palla*, or *Myers*.

Between these two categories of decisions are a third that does not necessarily assign the burden of proof to anyone but holds that summary judgment was improper because the plaintiff raised a genuine issue of material fact on the issue of unsound mind. *See Casu v. CBI Na–Con*, 881 S.W.2d 32, 34–35 (Tex. App.—Houston [14th Dist.] 1994, no writ) (affidavits on unsound mind created fact issue precluding summary judgment); *Tinkle v. Henderson*, 730 S.W.2d 163, 167 (Tex. App.—Tyler 1987, writ ref'd) (fact issue on unsound mind apparent from record and summary judgment based on limitations thus improper); *Bank of Commerce v. Barton*, 605 S.W.2d 638, 639–40 (Tex. App.—Fort Worth 1980, writ dism'd) (evidence of unsound mind created fact issue making summary judgment improper); *Fricke v. Wagner*, 315 S.W.2d 584, 586–88 (Tex. App.—Austin 1958, writ ref'd n.r.e.) (affidavits on unsound mind created fact issue precluding summary judgment).

Finally, one Texas decision has applied a different, shifting burden of proof. In *Dodson v. Ford*, the court of appeals held that when a plaintiff asserts unsound-

2001, pet. denied) (not designated for publication) (plaintiff's burden), *with Laura T. v. Baylor Univ. Med. Ctr.*, No. 05-96-01505-CV, 1998 WL 515151, at *2, *7–8 (Tex. App.—Dallas Aug. 21, 1998, no pet.) (not designated for publication) (stating it was defendant's burden but holding evidence didn't raise fact issue).

13

mind tolling, the defendant seeking summary judgment based on limitations has the initial burden to make a prima facie showing that the tolling statute does not apply. No. 02-12-00168-CV, 2013 WL 5433915, at *4 (Tex. App.—Fort Worth Sept. 26, 2013, no pet.) (mem. op.). If the defendant does so, then the plaintiff must raise a genuine issue of material fact as to his unsound mind to avoid summary judgment. *Id.* No other Texas decision appears to have applied *Dodson*'s approach.

Thus, to resolve this appeal, we must decide which of these conflicting approaches to follow. In doing so, we must hew to our own prior precedential decisions unless the Supreme Court has rendered a contrary decision, our court has revisited the issue en banc, or the Legislature has materially changed the relevant statutory law. *Medina*, 438 S.W.3d at 588. Since we decided *Freeman*, we have not revisited the issue en banc, and the Legislature has not materially changed the tolling statute for unsound mind, so unless there is contrary Supreme Court precedent, we must assign the burden of proof to Rollins, notwithstanding our contrary non-precedential decision in *Myers*. *See Freeman*, 53 S.W.3d at 713 (plaintiff's burden).

But there is contrary Supreme Court precedent. Subsequently, in *Erikson*, the Court unequivocally stated that in the summary-judgment context a defendant must "conclusively negate application of the discovery rule and any tolling doctrines pleaded as an exception to limitations." 590 S.W.3d at 563. This statement makes clear that once a plaintiff pleads an exception to the statute of limitations, the

14

defendant bears the burden to disprove its applicability and cannot obtain summary judgment unless he carries this burden. Though *Erikson* did not concern an unsound mind tolling theory in particular, unsound mind is a tolling doctrine that is an exception to limitations and thus is subject to the rule articulated in *Erikson* absent a contrary Supreme Court decision. There is no such decision. On the contrary, the Court has consistently said that a defendant who moves for summary judgment must disprove any pleaded exception that would toll the statute of limitations. *See Diaz v. Westphal*, 941 S.W.2d 96, 98 (Tex. 1997); *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996); *Zale*, 520 S.W.2d at 891. As an intermediate appellate court, we are not free to disregard this authority. *See Lubbock Cty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002).

Though the court of appeals decisions that place the burden of proof on the plaintiff most often do not state a rationale, their holdings appear to be premised on the notion that unsound mind is a matter of confession and avoidance. *See Brown*, 1992 WL 173449, at *1. Thus, they treat unsound mind as an affirmative defense to the affirmative defense of limitations, like fraudulent concealment, a matter on which the plaintiff bears the summary-judgment burden. *See ExxonMobil Corp. v. Lazy R Ranch*, 511 S.W.3d 538, 544 (Tex. 2017) (party asserting fraudulent concealment has burden to raise fact issue on each element of this defense to

limitations). But assuming unsound mind is a plea in confession and avoidance, this does not alter the burden of proof on summary judgment.

In *Woods v. William M. Mercer, Inc.*, the Court held that "the discovery rule is a plea in confession and avoidance." 769 S.W.2d 515, 517 (Tex. 1988). Accordingly, a plaintiff who relies on the discovery rule as a defense to limitations must plead it. *Id.* at 518. The plaintiff likewise bears the burden to prove that the discovery rule is applicable and obtain favorable findings as to its applicability at trial. *Id.* On summary judgment, however, the Court held that the defendant bears the burden "to negate the discovery rule by proving as a matter of law that no issue of material fact exists concerning when the plaintiff discovered or should have discovered" his injury. *Id.* at 518 n.2 (relying on *Weaver v. Witt*, 561 S.W.2d 792, 794 (Tex. 1977) (per curiam)). *Woods* therefore refutes the notion that a party who asserts a tolling doctrine that is or could be categorized as plea in confession and avoidance bears the summary-judgment burden of proof as to the tolling doctrine.

The court of appeals decisions that assign the burden to the plaintiff are marred by misunderstandings of the authority on which they rely. In summary:

- *Grace*, the most influential of these decisions, is inconsistent with the Third Court's own precedent, which states the burden is on the defendant. *See Hargraves*, 894 S.W.2d at 547; *Erhard*, 715 S.W.2d at 709. *Grace* relied on *Porter v. Charter Medical Corp.*, 957 F. Supp. 1427 (N.D. Tex. 1997). *See Grace*, 4 S.W.3d at 769. But *Porter* applied federal procedural law, which differs from Texas law as to the placement of the summary-judgment burden of proof. *See Porter*, 957 F. Supp. at 1436.

16

- *Chavez* relied on *Grace* and two other decisions that relied on *Grace*. *See Chavez*, 143 S.W.3d at 156. Thus, it is as infirm as *Grace*. *Chavez* also characterized unsound mind as a plea in confession and avoidance and held on this basis that the plaintiff bears the summary-judgment burden of proof. *See id.* Notably, one justice dissented on the basis that in *Woods* the Supreme Court held that a defendant moving for summary judgment based on limitations has the burden of negating tolling defenses. *See id.* at 157 (Lopez, J., dissenting) (citing *Woods*, 769 S.W.2d at 518 n.2).

- *Freeman* relied on *Grace*. *See Freeman*, 53 S.W.3d at 713. *Freeman* also relied on *Porter*, which the *Freeman* court erroneously characterized as "applying Texas law." *Id.* But *Porter* explicitly acknowledged that Texas law would place the summary-judgment burden as to unsound mind on the defendant and instead applied federal procedural law, which places the burden on the plaintiff. *See Porter*, 957 F. Supp. at 1436.

- *Gribble* uncritically relied on *Freeman*. *See Gribble*, 389 S.W.3d at 894.

- *Doe* recited the correct rule but did not apply it. The court first stated that when a nonmovant asserts a tolling statute, the movant must negate its applicability to obtain summary judgment. *Doe*, 362 S.W.3d at 723. In the very next sentence, however, the court contradicted itself by concluding that the plaintiff had to show that he was of unsound mind to preclude summary judgment. *Id.* For this contradictory proposition, *Doe* relied on *Wagner v. Texas A & M University*, 939 F. Supp. 1297 (S.D. Tex. 1996). *Wagner*, in turn, misread the Third Court's *Erhard* decision as saying so. *See Wagner*, 939 F. Supp. at 1317–18. In fact, *Erhard* says the opposite— that the burden is the defendant's. *See Erhard*, 715 S.W.2d at 709 (had plaintiff contended "in a writing filed in the cause" that she had been of unsound mind, "appellees then would have labored under the burden of establishing conclusively, in the summary-judgment record, that she was not of unsound mind within the meaning of the statute").

- *Palla* relied on a Third Court decision—*Vale*—for the premise that if a plaintiff "raises fact issues suspending limitations," the defendant must negate these fact issues. *Palla*, 877 S.W.2d at 474. But *Vale* actually stated that if "a plaintiff has asserted the applicability of a tolling provision, the moving defendant bears the burden of showing its inapplicability as a matter of law." *Vale*, 809 S.W.2d at 326.

17

In sum, Texas decisions holding that plaintiffs bear the summary-judgment burden of proof on unsound mind are primarily based on a misreading of other cases.

In addition, with respect to *Palla*, we note that no court has cited it for the notion that the summary-judgment burden of proof belongs to the plaintiff. This may be because *Palla* is distinguishable on another ground. The plaintiff in that case asserted a healthcare liability claim subject to an absolute two-year statute of limitations that is not subject to unsound-mind tolling. *See* 877 S.W.2d at 475. She thus had to assert that the application of limitations to her claim violated the open-courts provision of the Texas Constitution due to her mental incompetency. *See id.* Unlike other contexts, a plaintiff who argues that the open-courts provision defeats a limitations defense has the summary-judgment burden to raise a fact issue—even if the plaintiff's open-courts argument is premised on her unsoundness of mind. *See Yancy v. United Surgical Partners Int'l*, 236 S.W.3d 778, 781–82 (Tex. 2007).

The decisions of the Supreme Court unambiguously hold that a defendant moving for summary judgment based on limitations must conclusively negate any tolling exceptions pleaded by the plaintiff. *See, e.g.*, *Erikson*, 590 S.W.3d at 563. We therefore hold that the Convention bears the burden to prove that Rollins was of sound mind to obtain summary judgment. *See id.*

### C. The Convention did not carry its burden to conclusively negate the applicability of the unsound mind tolling exception.

The Convention advances three arguments in support of its position that it is

entitled to traditional summary judgment based on the applicable statutes of limitation, notwithstanding Rollins's invocation of the statutory tolling provision for unsound mind. First, the Convention argues that post-traumatic stress disorder and repressed memories cannot constitute unsound mind as a matter of law. Second, it argues that even if post-traumatic stress disorder or repressed memories could constitute unsound mind in general, Rosenstock's expert opinion fails to establish that Rollins in particular was of unsound mind. They reason that Rosenstock's opinion is scientifically unreliable, conclusory, and inadequate on its face because it does not show that Rollins was of unsound mind in 2004, which is the latest date by which his claims could have accrued. Finally, the Convention contends that other evidence in the record, including Rollins's 2004 lawsuit against Pressler for simple assault, negates the applicability of unsound-mind tolling because it shows that Rollins was capable of litigating any claims he had against the Convention at that time. We consider each argument in turn.

1. **Post-traumatic stress disorder and repressed memories are not incompatible with unsound-mind tolling as a matter of law.**

The Convention acknowledges that the tolling statute does not define unsound mind. *See* TEX. CIV. & PRAC. REM. CODE § 16.001(a)(2). But because Texas courts have held that unsound mind is the equivalent of insanity or incompetency, it argues post-traumatic stress disorder and the repression of selective memories that result solely in limited mental incapacity or partial disability are categorically incompatible

19

with the application of unsound-mind tolling. The Convention further argues that Rollins's memory-repression theory of tolling is more accurately categorized as an invocation of the discovery rule and that the Supreme Court has already rejected the application of the discovery rule based on repressed memories in *S.V. v. R.V.*, 933 S.W.2d 1 (Tex. 1996).

We agree that unsound mind is the equivalent of insanity or incompetency. *See, e.g.*, *Freeman*, 53 S.W.3d at 713 (unsound mind synonymous with insanity). But the concepts of insanity and incompetency are not all-or-nothing propositions requiring total incapacity or disability. Insanity, for example, is a generic term that encompasses "all kinds and conditions of mental unsoundness and derangement, and may assume as many various forms as there are shades of difference in the human personality." *Conaway v. State*, 663 S.W.2d 53, 55 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd). Thus, for purposes of unsound mind, insanity may take myriad forms, including but not limited to "religious or emotional insanity, senile dementia, monomania, paranoia, insane delusion, and kleptomania." *Lowery v. Lowery*, 386 S.W.2d 194, 197 (Tex. App.—Tyler 1965, no pet.). By definition, some of these forms of insanity are more limited in scope or effect than others. *See id.*

Our Supreme Court has implicitly recognized that unsound-mind tolling need not be predicated on total incapacity or disability. In *Ruiz*, the Court held that a plaintiff is of unsound mind under the tolling statute when he lacks the mental

capacity to pursue his suit because he is unable to participate in, control, or understand the suit's progression and disposition. 868 S.W.2d at 755; *see also Eber v. Harris Cty. Hosp. Dist.*, 130 F. Supp. 2d 847, 871 (S.D. Tex. 2001) (plaintiff is of unsound mind for purposes of tolling statute when he "is unable to manage his affairs or to understand his legal rights" to extent that infirmity renders him unable to participate in, control, or understand disposition of lawsuit). The inquiry focuses on subjects like the degree to which the plaintiff was incapable of giving information and testifying as a result of his unsound mind. *Ruiz*, 868 S.W.2d at 756. In this respect, the standard for unsound-mind tolling is somewhat akin to the test for a person's competency to stand trial in the criminal context, albeit with a focus on the person's mental competency in the past rather than the present. *See* TEX. CODE CRIM. PROC. art. 46B.003(a) (person incompetent if he lacks sufficient present ability to consult with lawyer with reasonable degree of rational understanding or lacks rational as well as factual understanding of proceedings against him).

Complete mental incapacity or disability undoubtedly qualifies as unsound mind under the tolling statute because it necessarily precludes a meaningful ability to pursue or participate in any suit. For example, in *Yancy*, the Supreme Court held that evidence that the plaintiff had been comatose since the accident precipitating suit sufficed to raise the issue of unsound mind. 236 S.W.3d at 782–83.

But a lesser degree of incapacity or partial disability may qualify as unsound

21

mind so long as the evidence ultimately shows the plaintiff lacked the ability to pursue or participate in the suit. In *Casu*, our sister court described the plaintiff as being of "diminished mental capacity" and held that evidence of his acute paranoid psychosis with defective cognitive and memory functioning resulting from chemical exposure presented a fact issue for purposes of unsound-mind tolling. 881 S.W.2d at 34–35. Similarly, in *Palla*, our court held that evidence of the plaintiff's "profound neurocognitive impairment," which made her unable to recall "many of the important aspects of her life," raised the issue of unsound mind. 877 S.W.2d at 474–75. Thus, Rollins's allegations of post-traumatic stress disorder and memory repression are not incompatible with unsound-mind tolling as a matter of law.

Though our opinion in *Myers* is non-precedential, it is almost directly on point and instructive here. In that case, the plaintiff alleged he had been sexually abused by the defendant minister from the time he was twelve years old through his late teens but the plaintiff did not bring suit until more than a decade later when he was in his late twenties. 1998 WL 723887, at \*2. The plaintiff had low cognitive function and social maturity, was in special education classes while in school, and had psychiatric issues, including post-traumatic stress disorder. *Id.* at \*3. Even though there was evidence the plaintiff's degree of mental incapacity or disability was far from total—including evidence that he had a driver's license, obtained a general equivalency diploma, and had held several jobs—we held the defendant

22

minister was not entitled to summary judgment on the basis of limitations because he had not conclusively disproved the plaintiff was of unsound mind for purposes of tolling. *Id.* at \*4–5. While the plaintiff in *Myers* did not allege repressed memories, Rollins's additional allegation of memory repression does not negate the possibility he was of unsound mind as a matter of law. *See Casu*, 881 S.W.2d at 34–35 (defective memory); *Palla*, 877 S.W.2d at 474–75 (impaired memory); *see also Doe v. St. Stephen's Episcopal Sch.*, No. C-08-299, 2008 WL 4861566, at \*1, \*7–8 (S.D. Tex. Nov. 4, 2008) (denying limitations-based motion to dismiss in suit in which plaintiffs asserted unsound-mind tolling based on allegation that sexual abuse endured decades before filing suit caused psychological injuries so chronic and severe as to make them unable to file suit or act on claims any sooner).

Nor does *S.V. v. R.V.* compel a different result. In that case, a divorcing couple's adult daughter intervened in the divorce alleging that her father had sexually abused her into her late teens. 933 S.W.2d at 3. The daughter made this claim outside of the limitations period but asserted the discovery rule applied as she had repressed all memory of the abuse until shortly before she intervened. *Id.* The trial court entered a directed verdict against the daughter on the basis of the statute of limitations. *Id.* A divided court of appeals reversed the trial court and remanded the case for a new trial. *Id.* at 3, 8. The Supreme Court held the discovery rule did not apply and affirmed the trial court's judgment on limitations grounds. *See id.* at

23

3. But in so holding the Court did not decide anything as to unsound-mind tolling, which the daughter did not assert as a basis for avoiding limitations.

A careful reading of *S.V. v. R.V.* shows it is distinguishable in at least two respects. First, the Court's decision turned on the specific requirements of the discovery rule, which materially differ from unsound-mind tolling. Second, the procedural posture of that case—directed verdict—differs from the present case in that the Court's ruling was predicated on a fully developed record.

The Court held that the discovery rule applies when an alleged injury is inherently undiscoverable and objectively verifiable. *Id.* at 6, 15. To be inherently undiscoverable, the injury must by nature be unlikely to be discovered within the limitations period despite due diligence. *Id.* at 7. To be objectively verifiable, the injury generally has to be indisputable or provable by direct evidence. *See id.* Evidence that satisfies the objective verifiability requirement includes a confession, a criminal conviction, contemporaneous records or written statements of the abuser such as diaries or letters, medical records of the victim showing contemporaneous physical injury, photographs or recordings of the abuse, or an objective eyewitness's account. *Id.* at 15. Expert testimony cannot provide the objective verification of injury required by the discovery rule, at least not when there is not a settled scientific consensus on the subject. *See id.* at 7, 15, 18.

In contrast, unsound mind does not require a plaintiff to show his injury is

inherently undiscoverable or objectively verifiable. Application of unsound-mind tolling instead turns on the plaintiff's inability to participate in, control, or understand the progress and disposition of a lawsuit concerning his injuries. *Ruiz*, 868 S.W.2d at 755. The plaintiff ultimately may prove at trial that he is entitled to the tolling of limitations based on unsound mind by either producing specific evidence showing he lacked the mental capacity to pursue his suit or submitting a fact-based expert opinion to this effect. *Freeman*, 53 S.W.3d at 713. Given that unsound-mind tolling and the discovery rule have distinct requirements, courts separately analyze the two tolling doctrines when a plaintiff asserts both as a defense to limitations in the same suit. *See, e.g.*, *Grahmann*, 2001 WL 856963, at *2–3; *Grace*, 4 S.W.3d at 769–71; *accord Doe v. Catholic Soc'y of Religious & Literary Educ.*, No. H-09-1059, 2010 WL 345926, at *17–19 (S.D. Tex. Jan. 22, 2010) (separately analyzing unsound mind and discovery rule under Texas law).

*S.V. v. R.V.* turned on the particular requirements of the discovery rule, which are not readily translatable to unsound-mind tolling. The Court assumed without deciding that memory repression could render some claims of sexual abuse inherently undiscoverable. 933 S.W.2d at 8. But it held that the daughter's claim of sexual abuse was not objectively verifiable. *Id.* at 15. The Court only did so, however, after reviewing the evidence at trial in detail. *Id.* at 8–13. It also reviewed the scientific evidence as to repressed memories at some length and then concluded

25

that expert testimony on this subject could not demonstrate objective verifiability because there was no scientific consensus on the subject. *Id.* at 15–20.

The present case differs from *S.V. v. R.V.* in that it is an appeal from a summary judgment decided on a very limited evidentiary record. Neither Rollins nor his expert, Rosenstock, have been deposed. Rosenstock submitted two affidavits. Pressler and the other defendants have not introduced affidavits from their own experts, if they have retained any. The parties appear to have made little or no written discovery or document production. The record contains no evidence as to the present state of scientific opinion on the issue of sexual abuse and repressed memories. In short, our record is not comparable to the trial record in *S.V. v. R.V.*

These record differences are significant. Assuming the Court's rationale for refusing to apply the discovery rule to claims of repressed sexual abuse could somehow be extrapolated to unsound-mind tolling despite the distinct requirements of these two tolling doctrines, we do not know whether Rollins will be able to support his claims of sexual abuse with indisputable or direct evidence at this point in the litigation due to the limited extent of discovery—discovery that the trial court limited before ruling on the various defendants' summary-judgment motions.[4] Nor does the record inform us of the present state of scientific opinion on repressed

---

[4]   The trial court's discovery rulings are referenced in the record, but its orders are omitted. The record does, however, indicate that the defendants sought to limit the scope of discovery pending a ruling on their dispositive motions.

memories. *S.V. v. R.V.* was decided almost 25 years ago. Scientific inquiry seldom stands still for a quarter of a century; the consensus then may no longer be the consensus now. Because the Court's discovery-rule holding was based on the evidence before it and the state of scientific opinion at the time, a different outcome is at least theoretically possible today. *See id.* at 15 (recognizing possibility "that recognized expert opinion on a particular subject would be so near consensus that, in conjunction with objective evidence not based entirely on the plaintiff's assertions, it could provide the kind of verification required" to apply discovery rule). Thus, assuming for the sake of argument that *S.V. v. R.V.*'s rationale could be extrapolated to unsound-mind tolling, the record in this case is too underdeveloped for us to conclude that its rationale forecloses Rollins's sexual-abuse claims as matter of law.

**2. Any inadequacies in Rosenstock's opinion are not dispositive because the Convention bears the burden of proof on summary judgment.**

The Convention contends that Rosenstock's expert opinion is incompetent summary-judgment evidence for three reasons. Specifically, it contends his opinion is:

- scientifically unreliable because there is too great an analytical gap between the methodology he used and the conclusions he reached;

- conclusory and thus constitutes no evidence; and

- inadequate on its face because he does not demonstrate that Rollins was of unsound mind in 2004 when any of Rollins's claims last accrued.

27

As an initial matter, the Convention has not preserved for appellate review its complaint about an ostensible analytical gap between Rosenstock's methodology and conclusions because it did not move to exclude his opinion on this basis in the trial court. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 817 (Tex. 2009) (challenge to reliability of expert opinion must be made in trial court when it requires court to evaluate methodology, technique, or foundational data).

Setting aside error preservation, all three of the Convention's complaints about Rosenstock's opinion share a common fault: they misallocate the burden of proof. Even if the Convention is right that Rosenstock's opinion is not competent evidence, Rollins does not have to prove that he was of unsound mind on summary judgment. Instead, the Convention has the burden to conclusively prove that Rollins was of sound mind. *See Erikson*, 590 S.W.3d at 563. The Convention must carry its burden of proof regardless of the quality or quantity of Rollins's evidence. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 639 (Tex. 2009). The Convention therefore cannot obtain summary judgment simply by discrediting or disposing of Rollins's evidence of the opposite state of affairs. *See id.*; *see also Amedisys, Inc. v. Kingwood Home Health Care*, 437 S.W.3d 507, 511–12 (Tex. 2014) (court cannot grant summary judgment by default even when nonmovant does not file response if summary-judgment evidence is insufficient). Its summary-judgment arguments as to Rosenstock's opinion amount to a species of *argumentum ad ignorantiam* (argument

28

from ignorance)—the mistaken notion that something is demonstrably false because it has not been proved true.

### 3. Other evidence, including Rollins's 2004 simple assault lawsuit, does not negate the possibility of unsound-mind tolling.

The Convention argues evidence in the record conclusively proves that Rollins was of sound mind for tolling purposes. In particular, it relies on a 2004 lawsuit in which Rollins sued Pressler for simple assault as conclusive proof that Rollins had the ability to participate in, control, or understand the progress and disposition of a lawsuit when his claims against the Convention last accrued.

At the outset, we reiterate that the record before us is threadbare. It contains very little evidence shedding light on Rollins's past mental competency. Rollins has not been deposed. The record does not contain his healthcare records.

In Rollins's live pleading, he alleges he was enrolled in a college in San Marcos on an on-again, off-again basis during the 1980s and 1990s but did not graduate. He also alleges he worked part-time at a pawnshop and held other unspecified part-time jobs in the 1990s. According to Rollins, he also worked as an office assistant for Pressler at Pressler's home office in 2003–04.

Rollins's allegations about college and employment are judicial admissions as to these facts. Though these admissions show he had the ability to manage his affairs to some extent, they do not conclusively prove he had the mental capacity to sue the Convention before he filed the present suit. Consider two cases.

In *Myers*, the plaintiff had a driver's license, obtained a general equivalency diploma, and held several jobs, including positions as an assistant manager of an apartment complex, dishwasher, and cab driver. 1998 WL 723887, at *4. We nonetheless held this summary-judgment evidence did not conclusively prove the plaintiff had been of sound mind. *Id.* at *4–5. Similarly, in *Gribble*, our sister court held that a fact issue existed as to whether an intellectually disabled plaintiff had been of unsound mind, despite evidence he had held a job through a government program for eight years and participated in the Special Olympics, and even though he had briefly testified during a hearing. 389 S.W.3d at 885–86, 894–95. In doing so, the court decided the plaintiff's ability to engage in these activities was not conclusive as to whether he also had the ability to pursue litigation. *See id.* The same is true here. In this instance, we know only that Rollins went to college for a period of time and held part-time jobs. We do not know any details about these activities, such as their duration or the quality of his performance. Sporadic studies and employment are not conclusive evidence that Rollins could participate in, control, or understand the progression and disposition of any lawsuit against the Convention let alone one allegedly involving repressed sexual abuse.

In Rollins's live pleading, he also admits to an extensive history of criminal convictions beginning in 1986 and continuing through 2014. Records summarizing Rollins's criminal history show he has six convictions for driving while intoxicated

as well as convictions for theft and possession of heroin. He also was charged with forgery and burglary of a habitation. Rollins's live pleading and the summary records show that he was incarcerated several times. But the record does not include much additional detail regarding Rollins's criminal history.

In criminal proceedings, competency is presumed unless contested and disproved. TEX. CODE CRIM. PROC. art. 46B.003(b). None of the underlying pleadings or evidence from Rollins's criminal proceedings are in the record. Nor is there any testimony from his criminal defense attorneys. Thus, the record does not indicate whether Rollins's competency was ever questioned. Without further evidence of the underlying proceedings, a summary of Rollins's prior convictions and criminal history does not conclusively prove that Rollins could participate in, control, or understand the progression and disposition of a civil lawsuit against the Convention let alone one allegedly involving repressed sexual abuse.[5]

Finally, we address Rollins's previous lawsuit against Pressler. The petition, settlement agreement, and order of nonsuit from that suit are in the record.

---

[5]     Indeed, Pressler testified during his deposition that he thought Rollins's extensive criminal history indicated that Rollins was not mentally capable.

31

In 2004, Rollins and his mother sued Pressler. Citing the Penal Code's provision for simple assault,[6] Rollins alleged that in November 2003 "Pressler committed an assault against him" that resulted in "bodily injury" while they were together in Dallas. Rollins and his mother both asserted a second cause of action for breach of an informal fiduciary duty against Pressler. Neither Rollins nor his mother specified a factual basis for their claims beyond the assault and bodily injury.

Less than two months later, the parties settled. In their confidential settlement agreement, Pressler denied liability but agreed to pay Rollins $1,500 per month for 25 years plus an additional $5,000 payable on dismissal of all claims. Rollins, his mother, and Pressler signed the settlement agreement, which also stated it constituted a release of claims against the law firm of Woodfill & Pressler. The settlement language is general; it does not specify the nature of the settled claims. During his deposition, Pressler testified that Rollins accused him of sexual assault throughout the course of the 2004 suit. But Pressler acknowledged that neither the petition nor the settlement agreement made any kind of reference to sex.

Two weeks after the parties executed the settlement agreement, the trial court

---

[6] Rollins cited Section 22.01(a)(1) of the Penal Code, which provides that a person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." In this context, "bodily injury" means "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE § 1.07(a)(8). The elements of assault are the same in both civil suits and criminal prosecutions. *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012).

signed an order of nonsuit memorializing the plaintiffs' nonsuit of their claims.

The evidence about the 2004 lawsuit is conflicting as to whether Rollins alleged sexual abuse at that time. Pressler testified that Rollins did so but conceded the petition made no such allegation. It is undisputed that the petition alleged simple assault and referred solely to bodily injury sustained on a single occasion in November 2003 in Dallas. Given this evidentiary conflict, we cannot conclude that the evidence shows as a matter of law that Rollins was aware of the allegedly repressed sexual abuse at the time of the previous 2004 lawsuit against Pressler. *Cf. Placette v. M.G.S.L.*, No. 09-09-00410-CV, 2010 WL 1611018, at *3, *5–6 (Tex. App.—Beaumont Apr. 22, 2010, no pet.) (mem. op.) (reversing order denying summary judgment and entering take-nothing judgment in suit in which sexually abused plaintiff with post-traumatic stress disorder and her psychiatrist both conceded that plaintiff "has always had the cognitive awareness of her injury and intellectual capacity to comprehend what happened to her").

Thus, the question is whether the mere fact that Rollins sued Pressler for simple assault in 2004 constitutes conclusive evidence that Rollins was able to participate in, control, or understand the progression and disposition of a suit against the Convention at that time. We hold that it is not for three interrelated reasons.

First, while the wherewithal to pursue redress for one type of wrong certainly is some evidence of a person's capability to seek redress in general, such evidence

does not conclusively prove the person was capable of pursuing redress for any and every conceivable wrong. In the 2004 lawsuit, Rollins alleged a wrong—simple assault on a single occasion resulting in immediate bodily injury—that is readily perceived or understood by most persons, including some persons whose mental capacity is impaired in some fashion. In contrast, Rollins alleges that he was unaware of the underlying wrong for which he now sues—sexual abuse that occurred long ago—until relatively recently due to post-traumatic stress disorder and memory repression. This allegation, if ultimately proved, precludes the possibility that he could have given information or testified about the sexual abuse beforehand. The ability to give information and testify, rather than mere access to the courts, is an important factor in deciding whether a plaintiff lacked a viable opportunity to protect his legal rights on account of being of unsound mind. *See Ruiz*, 868 S.W.2d at 755–56.

Second, the evidence as to the 2004 lawsuit is too scant to be conclusive on the dispositive issue, which is whether Rollins lacked the ability "to participate in, control, or even understand the progression and disposition" of his lawsuit. *Id.* at 755. The petition, settlement, and order of nonsuit show that Rollins was a party to a lawsuit that was resolved out of court within about two months of filing. There is no evidence about the extent of Rollins's participation, control, or understanding of the suit's progression and disposition. Nor is there any evidence about the extent to

34

which he was capable of giving information to his attorney or testifying had doing so become necessary. Notably, Rollins's mother was a plaintiff in the 2004 suit even though the petition does not suggest how she, as opposed to her son, was wronged. Absent contrary evidence, a factfinder could infer from her involvement that her son was not capable of pursuing the suit on his own. At any rate, on this record, we can do no more than speculate as to what role Rollins played in the prosecution of the 2004 lawsuit. Speculation, of course, is not evidence, let alone conclusive evidence, and it cannot support summary judgment. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004) (speculation is not evidence) *Mariner Fin. Grp. v. Bossley*, 79 S.W.3d 30, 34 (Tex. 2002) (summary-judgment standard does not permit speculation).

Third, in *Ruiz*, the Supreme Court held that prior lawsuits filed by or on behalf of a person who invokes unsound-mind tolling in a later suit do not, standing alone, disentitle him to the tolling of limitations in the later suit. 868 S.W.2d at 756. As discussed, the evidence as to the 2004 lawsuit establishes little more than that it was filed and quickly settled. The Court's decision in *Ruiz* is therefore dispositive.

In *Ruiz*, an employee sustained head injuries while working on an oil well. *Id.* at 753. He and his wife sued his employer, which joined the well's owner. *Id.* The two plaintiffs also separately sued the owner in another county. *Id.* Both suits were dismissed, one for discovery abuse and the other for want of prosecution. *Id.* After

35

these suits were dismissed and almost five years after the accident, the employee was adjudged mentally incompetent and his wife was appointed as his guardian. *Id.* at 753–54. She later filed suit against the well's owner on her husband's behalf. *Id.*

In this third suit, the well's owner moved for summary judgment based on the two-year statute of limitations. *Id.* at 754. The trial court denied the motion on the basis that the employee's unsound mind tolled limitations. *Id.* The court of appeals also held that the suit was not barred by limitations. *Id.* at 753–54. On appeal, the well's owner argued that limitations should not be tolled during the prior two lawsuits—a period exceeding two years—because those suits showed that the employee was of sound enough mind to access the courts. *See id.* at 755. The Supreme Court disagreed, holding that the prior suits, considered alone, were "insufficient to deny the protection of the tolling provision." *Id.* at 756.

*Ruiz* differs from Rollins's suit in that the well's owner conceded that the employee-plaintiff was mentally incompetent and had been so since the accident. *Id.* at 755. But our court has applied *Ruiz* even when the defendant has not conceded that the plaintiff was incompetent. *See Palla*, 877 S.W.2d at 474–75, 477 (plaintiff's deposition and expert opinion created fact issue as to soundness of plaintiff's mind).

In *Palla*, the plaintiff's husband, acting as his wife's next friend, sued multiple defendants on her behalf after she suffered brain damage during a hospital stay. *Id.* at 474–75 & n.1. He timely sued fifteen defendants but filed suit against another one

36

after two years had elapsed. *Id.* at 474, 476. Applying *Ruiz*, we held that the plaintiff's timely suit against the other defendants was not sufficient to deny her the protection of the unsound mind tolling statute with respect to the defendant she sued after the two-year limitations period. *Id.* at 477; *see also Casu*, 881 S.W.2d at 33–34 (rejecting defendant's contention that plaintiff's prior timely filing of suit against two others showed that plaintiff was not of unsound mind).

We hold that the prior litigation between Rollins and Pressler does not conclusively prove that Rollins was of sound mind in 2004 when his sexual-assault claim last accrued. *See Ruiz*, at 868 S.W.2d 756; *Palla*, 877 S.W.2d at 477; *Casu*, 881 S.W.2d at 33–34. Thus, this evidence does not satisfy the Convention's burden of proof. Because the Convention did not conclusively negate the unsound-mind exception to limitations, the trial court erred in granting summary judgment.

### Fraudulent Concealment

Because the Convention did not conclusively negate Rollins's unsound mind tolling theory, it is not entitled to summary judgment based on limitations. We therefore need not resolve the parties' dispute about whether the doctrine of fraudulent concealment provides a defense to limitations. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We reverse the trial court's judgment in which it ruled in favor of the Southern Baptist Convention on the basis of limitations. We remand this cause to the trial court for further proceedings consistent with our opinion.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Hightower.

Hightower, J., dissenting.